IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ralph Natale<br>c/o J. Conor Corcoran, Esquire<br>1617 JFK Boulevard, Suite 1130<br>Philadelphia, PA 19103 | : <br> : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No. |
| v. | : <br> : | JURY TRIAL DEMANDED |
| United States of America<br>Department of Justice<br>c/o U.S. Attorney's Office<br>for the E.D.Pa.<br>615 Chestnut Street<br>Philadelphia, PA 19106 | : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| Mary Futcher<br>United States of America<br>Department of Justice<br>c/o U.S. Attorney's Office<br>for the E.D.Pa.,<br>615 Chestnut Street<br>Philadelphia, PA 19106, | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| Ricardo Martinez, Warden,<br>FCC Allenwood<br>Allenwood, PA 17810 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| Kelly DeWald<br>Health Services Administrator<br>FCC Allenwood<br>Allenwood, PA 17810 | : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| John/Jane Does 1-100 | : | |

United States of America :
Department of Justice :
c/o U.S. Attorney's Office :
for the E.D.Pa., :
615 Chestnut Street :
Philadelphia, PA 19106, :
:
                Defendants. :
_____:

## COMPLAINT
### Jurisdiction and Venue

1.     This action is brought pursuant to 42 U.S.C. § 1983, <u>Bivens</u> 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. § 1346. Jurisdiction over this cause of action is based upon 28 U.S.C. §§ 1331, 1343, 1367 and the aforementioned statutory provisions.

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1331 and 1391(b) because the events or a substantial part of the events that give rise to Plaintiff's civil rights claims occurred in the Eastern District of Pennsylvania.

### Parties

3.     Plaintiff Ralph Natale is an adult individual and U.S. citizen who can be served with process at the office of his undersigned counsel, J. Conor Corcoran, at 1617 JFK Blvd, Suite 1130, Philadelphia, PA 19103. At all times relevant to this action, he was incarcerated in a variety of federal penitentiaries, mostly in the Eastern District of Pennsylvania.

4.     Defendant Mary Futcher is an adult individual and U.S. citizen who, upon information and belief, at all times relevant is/was acting within the scope of his/her office or employment as an employee/agent of United States of America, Department of Justice, and its subdivision of the U.S. Attorney's Office for the E.D.Pa., and/or was employed and/or lived in the Eastern District of Pennsylvania at all times relevant, and can be served with process at the aforementioned address of 615 Chestnut Street Philadelphia, PA 19106.

5.     Defendant Ricardo Martinez is an adult individual and U.S. citizen who, upon information and belief, at all times relevant is/was acting within the scope of his/her office or employment as an employee/agent of United States of America, Department of Justice, Bureau of Prisons, and/or was employed and/or lived in the Eastern District of Pennsylvania at all times relevant, and can be served with process at the aforementioned address of 615 Chestnut Street Philadelphia, PA 19106 or FCC Allenwood, Allenwood, PA 17810.

6.     Defendant Kelly DeWald is an adult individual and U.S. citizen who, upon information and belief, at all times relevant is/was acting within the scope of his/her office or employment as an employee/agent of United States of America, Department of Justice, Bureau of Prisons, and/or

was employed and/or lived in the Eastern District of Pennsylvania at all times relevant, and can be served with process at the aforementioned address of 615 Chestnut Street Philadelphia, PA 19106 or FCC Allenwood, Allenwood, PA 17810.

7. Defendants John/Jane Doe 1-100 are adult individuals and U.S. citizens who, upon information and belief, at all times relevant are/were acting within the scope of his/her office or employment as employees/agents of United States of America, Department of Justice, and its subdivisions of the U.S. Attorney's Office, the Federal Bureau of Investigation, the U.S. Marshalls, and/or the Bureau of Prisons, and/or was employed and/or lived in the Eastern District of Pennsylvania at all times relevant, and can be served with process at the aforementioned address of 615 Chestnut Street Philadelphia, PA 19106.

8. At any and all times relevant herein, Defendant United States of America acted by and through its lawful subdivisions, as aforementioned, and any agents, workmen, independent contractors, and/or employees thereof, including but not limited to the agents, workmen, independent contractors, and/or employees of the U.S. Attorney's Office for the E.D.Pa., the Bureau of Prisons, the U.S. Marshalls, and the Federal Bureau of Investigation. Defendant United States of America, Department of Justice, and its subdivisions of the U.S. Attorney's Office for the E.D.Pa., the Bureau of Prisons, the Federal Bureau of Investigation, and the U.S. Marshalls, and can be served with process at the aforementioned address of 615 Chestnut Street Philadelphia, PA 19106 or FCC Allenwood, Allenwood, PA 17810.

## Factual Allegations

9. From June 1998 through May 2011, Plaintiff was incarcerated in a variety of federal penitentiaries, including but not limited to FCC Allenwood.

10. While incarcerated, Plaintiff worked with the FBI and the U.S Attorney's Office to help the federal government secure convictions against a number of unrelated third parties, including but not limited to testifying as a cooperating witness during federal prosecutions in at least four separate trials from 2000 to at least 2004 (hereinafter referred to as the "cooperating period.")

11. During the cooperating period, and more specifically in approximately November of 2002, Plaintiff began to report to prison staff and prison physicians about degenerating vision in his left eye.

12. During the cooperating period, and until his release in May 2011, Plaintiff's vision in both eyes progressively degenerated, during which time Plaintiff would periodically make oral and/or written requests of Defendants and/or prison staff and/or prison physicians and/or agents from the FBI and/or the U.S. Marshalls and/or agents/attorneys from the U.S. Attorney's Office for investigation, diagnosis and/or treatment of his degenerating vision.

13. From November 2002 until his release in May 2011, Defendants failed to properly investigate, diagnose and/or treat Plaintiff's degenerating eyesight, and throughout that time, failed to keep Plaintiff apprised of the causes behind his degenerating eyesight.

14.     For example, during the cooperating period (as Plaintiff was testifying at 6th and Market Streets in Philadelphia and, upon information and belief, was being held in a federal prison located at either 7th and Arch Streets in Philadelphia and/or in the immediate metropolitan vicinity), Plaintiff's daughter-in-law, Kathaleen Natale (a CT scan nurse/technician at the Wills Eye Institute, a renowned eye-care center in Center City Philadelphia), made an appointment for Plaintiff to visit Wills Eye, in order to properly investigate, diagnose and/or treat Plaintiff's degenerating eyesight.

15.     Upon information and belief, during the cooperating period, Kathaleen Natale (and/or other members of Plaintiff's family) secured permission from the Bureau of Prisons and/or the U.S. Attorney's Office to have Plaintiff seen by doctor(s) at the Wills Eye Institute while Plaintiff was testifying nearby, and agreed to pay any overtime and ancillary costs incurred by federal marshals in escorting Plaintiff to Wills Eye.

16.     Upon information and belief, Kathaleen Natale therefore secured an appointment for Plaintiff to be seen by a specific doctor and/or doctors at Wills Eye, while Plaintiff was testifying in Center City Philadelphia during the cooperating period.

17.     Despite Kathaleen Natale's arrangements, and the willingness of Plaintiff's family to shoulder any additional costs created by the Wills Eye visit, Plaintiff was never allowed to go through with the appointment, nor was Plaintiff allowed to reschedule.

18.     Upon information and belief, Defendant Assistant U.S. Attorney Mary Futcher intentionally interfered and/or refused to allow Plaintiff to visit the doctor(s) at Wills Eye as scheduled (and/or refused to allow the appointment to be rescheduled) by directing agents of the Bureau of Prisons, the FBI, the U.S. Marshalls and/or the U.S. Attorney's Office to prohibit the same.

19.     Beyond that noxious example, and until Plaintiff was released in May 2011, Defendants Ricardo Martinez and/or Kelly DeWald (by and through their prison staff and/or prison physicians) continually failed to properly provide any semblance of an adequate investigation, diagnosis, and/or treatment of Plaintiff's degenerating eyesight.

20.     For example, on or about February 17, 2005, Plaintiff submitted a request to prison staff and/or prison medical staff to be examined by a neuro-ophthalmologist because of his degenerating eyesight, as prison physicians theretofore had failed to properly investigate, diagnose and/or treat Plaintiff's degenerating eyesight.

21.     In response to the aforementioned request, the Clinical Director of FCC Allenwood ordered that Plaintiff see an optometrist yet again because there "were no signs to authenticate the inmate's suspicions."

22.     In another memorable series of events, on or about September 28, 2005, Defendant USA produced Plaintiff to be examined at the Mayo Clinic by Dr. Brian Younge. Dr. Younge wrote to David Edwardy, O.D. of the Federal Medical Center, that Plaintiff had been previously seen

by an "ophthalmologist and a diagnosis not established," that Plaintiff had degenerating vision "of fairly longstanding nature," but that Plaintiff had "a better level of visual acuity than he admits." *See* Younge Report, a true and correct copy of which is attached hereto and incorporated herein as Exhibit A.

23. By May 2007, Plaintiff was examined by prison staff and/or prison physician(s) at FCC Allenwood, who informed Plaintiff that he was legally blind.

24. From that September 2005 visit with Dr. Younge, until Plaintiff's May 2011 release from prison, upon information and belief Plaintiff was never taken to an ophthalmologist or neuro-ophthalmologist during that five and a half year period.

25. Additionally and/or in the alternative, from that September 2005 visit with Dr. Younge until Plaintiff's May 2011 release from prison, upon information and belief, Defendant USA continually failed to properly investigate, diagnose and/or treat Plaintiff's degenerating eyesight, despite the fact that all Defendants knew or should have known that Plaintiff's eyesight could worsen and cause Plaintiff undue harm – namely, blindness.

26. As a result of Defendants' failure to provide adequate treatment for Plaintiff's obviously degenerating eyesight while he was in their care, as of the date of this filing, Plaintiff is functionally blind, with limited peripheral vision, at best. Plaintiff is unable to see better than 20/200 in either eye, and has been subsequently diagnosed since his release from prison as having a host of retinal conditions, including but not limited to macular degeneration, macular atrophy, posterior vitreous detachment and asteroid hyalosis.

27. On or about May 10, 2012, Plaintiff submitted an administrative tort claim to the U.S. Department of Justice. *See* submission of administrative tort claim, and acknowledgment of receipt, attached hereto and incorporated herein as Exhibit B.

28. Over six months have passed since the submission of Exhibit B to the U.S. Department of Justice, and Defendant USA has yet to respond to Plaintiff's undersigned counsel, save for acknowledgement of the submission. *See* Exhibit B.

## PLAINTIFF v. DEFENDANTS
## COUNT I
## VIOLATION OF PLAINTIFF'S CIVIL RIGHTS - IMPROPER MEDICAL ATTENTION – 42 U.S.C. § 1983/BIVENS ACTION

29. Averments 1 thru 28 are hereby incorporated as though fully set forth herein at length.

30. By virtue of Plaintiff's frequent complaints about his degenerating eyesight, as more fully set forth above, which began in 2002 and were issued until the time of his release in 2011, Defendants had direct knowledge of the extremely serious nature of Plaintiff's deteriorating vision.

31.     For nearly a decade, while he was under the custody, care and control of Defendant USA, and despite the excessive risk to Plaintiff's health and safety, Defendants showed deliberate indifference (at best) and/or negligently and/or intentionally interfered with and/or prohibited the proper investigation, diagnosis and/or treatment of Plaintiff's degenerating eyesight.

32.     To wit, Plaintiff's family took it upon themselves to make arrangements for Plaintiff to visit Wills Eye Institute to see a specific doctor or doctors — including making the appointment, securing permission for Plaintiff to attend and offering to cover any additional costs incurred by the prison in transferring him there— when Defendant U.S. Attorney Mary Futcher denied Plaintiff's request to attend the appointment at the last minute, offering no compelling reason for her decision, and directed unidentified agents/employees of the FBI, the BOP and/or the U.S. Marshalls to refrain from allowing Plaintiff to visit Wills Eye. Upon information and belief, Defendant U.S. Attorney Mary Futcher also contacted a specific doctor or doctors at Wills Eye, and cancelled the appointment herself.

33.     In another example, when Dr. Brian Younge of the Mayo Clinic diagnosed Plaintiff with an irrecoverable decrease in vision in his left eye in 2005, he suggested Plaintiff make a return visit within a few months if the condition worsened. As Plaintiff's vision continued to degenerate, however, Defendants never allowed him to return to the Mayo Clinic for further medical assistance.

34.     As a direct result of the aforementioned actions and omissions by Defendants, which are an illustrative but not exhaustive list, Plaintiff suffered irreparable damage to his vision, having lost nearly all sight. Had Defendants not acted with deliberate indifference (at best) and/or negligently and/or intentionally interfered with and/or prohibited the proper investigation, diagnosis and/or treatment of Plaintiff's degenerating eyesight for several years, this devastating degeneration of his eyesight could have been avoided, or at the very least tempered.

35.     Defendants' deliberate indifference and/or intentional interference and/or prohibition of treatment of Plaintiff's medical needs, while acting under color of state and/or federal law, deprived Plaintiff of his rights, privileges and/or immunities secured by the Constitution and laws of the United States, including but not limited to his right to receive proper medical treatment while incarcerated, in violation of the Eighth Amendment.

36.     Defendants' failure to properly investigate, diagnose and/or treat Plaintiff's degenerating eyesight, while acting under color of state and/or federal law, deprived Plaintiff of his rights, privileges and/or immunities secured by the Constitution and laws of the United States, including but not limited to his right to receive proper medical treatment while incarcerated, in violation of the Eighth Amendment.

37.     Defendants' actions and/or inactions, as aforementioned, violated Plaintiff's constitutionally protected rights of substantive and/or procedural due process, and/or equal protection. Defendants violated Plaintiff's rights under the Fourth, Fifth and/or Fourteenth Amendments to the U.S. Constitution.

38.     Upon information and belief, the Defendants' actions and/or inactions, as aforementioned, were taken intentionally, willfully and/or with deliberate indifference to, or reckless disregard

for, the rights secured to Plaintiff by the Constitution and the laws of the United States. Defendants' actions and/or inactions, as aforementioned, denied Plaintiff his civil rights—namely, equal protection of the law in violation of the U.S. Constitution, Fifth Amendment, Equal Protection Clause, Privileges and Immunities Clause, the procedural and due process guarantees of the Fourth and Fourteenth Amendments (under <u>Bivens</u>) and the cruel and unusual punishment prohibitions of the Eighth Amendment.

39. Defendants' actions and/or inactions, as aforementioned, were a factual cause of and/or actually caused Plaintiff substantial and irreversible harm.

40. Plaintiff is currently unable to work, and has suffered emotional, physical and/or psychological injuries of catastrophic severity, for well over a decade, rendering him blind and thereby hindering his ability to conduct the remaining years of his life with any normalcy, crippling Plaintiff and preventing him from enjoying the pleasures of life that sight provides.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in the amount of $10,000,000 (Ten Million Dollars), as would reasonably and properly compensate him for his injuries, together with costs and attorney's fees and any other relief this Honorable Court deems appropriate.

**PLAINTIFF v. DEFENDANTS
COUNT II
VIOLATION OF PLAINTIFF'S CIVIL RIGHTS -
<u>CONSPIRACY TO DEPRIVE – 42 U.S.C. § 1985(3)</u>**

41. Plaintiff hereby incorporates averments 1 through 40 as though fully set forth herein at length.

42. Plaintiff believes and therefore avers that Defendants, through their actions and/or inactions as aforementioned, did intentionally conspire, while acting within the course and scope of their authority, to deprive Plaintiff of his rights and privileges under 42 U.S.C. section 1983, which ultimately caused Plaintiff substantial damage and harm.

43. Defendants' civil conspiracy for their malicious, intentional and/or reckless actions and/or inactions was a factual cause of and/or caused Plaintiff's substantial damage and harm.

44. Upon information and belief, Defendants, and/or other unidentified agents of the BOP, FBI, U.S. Marshals, and or U.S. Attorney's Office, did intentionally conspire, while acting within the course and scope of their authority, deprive Plaintiff of his rights and privileges while incarcerated, under 42 U.S.C. section 1983, which ultimately caused Plaintiff substantial damage and harm. Such a conspiracy inures to the detriment of Defendant USA.

45. All Defendants' civil conspiracy for its malicious, intentional and/or reckless actions and/or inactions was a factual cause of and/or caused Plaintiff's substantial damage and harm, as aforementioned.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in the amount of $10,000,000 (Ten Million Dollars), as would reasonably and properly compensate him for his injuries, together with costs and attorney's fees and any other relief this Honorable Court deems appropriate.

**PLAINTIFF v. DEFENDANTS
COUNT III
<u>FEDERAL TORT CLAIMS ACT - 28 U.S.C. § 1346</u>**

46. Averments 1 through 45 are incorporated as though fully set forth herein at length.

47. The actions and omissions of Defendants in continuously ignoring Plaintiff's medical needs and denying his requests to receive proper medical treatment for his degenerating eye condition were careless, reckless, and/or negligent and/or deliberately indifferent and/or intentional.

48. Plaintiff's injuries, more fully set forth above, were directly and proximately caused by the carelessness, recklessness and negligence and/or deliberate indifference and/or intentional interference of Defendants, their agents, servants, workmen, and/or employees, and included but were not limited to the loss of vision in his eyes, and severe emotional and/or psychological distress, some of which are permanent in nature, and are expected to continue throughout Plaintiff's lifetime.

49. The carelessness, recklessness and negligence of Defendants, acting by and through their agents, servants, workmen, and/or employees, consisted of the following:

(a) Failure to conform to the requisite standard of reasonable medical care and skill under the circumstances, and at the time, with respect to Plaintiff;

(b) Failure to provide and render reasonable medical care to Plaintiff under the circumstances;

(c) Failure to properly select, train, and supervise its agents, servants, workmen, independent contractors or employees to assure Plaintiff reasonable treatment and care under the circumstances;

(d) Failure to diagnose and treat Plaintiff appropriately and expeditiously;

(e) Failure to utilize appropriate and requisite laboratory, hospital, and consulting facilities in treating Plaintiff;

(f) Negligence as a matter of law; and

(g) Such other acts and/or omissions constituting carelessness, recklessness and negligence as may become evident during the course of discovery or at the trial of this action.

50. As a direct result of the aforementioned injuries, Plaintiff has suffered, and will continue to suffer for an indefinite time in the future, devastating physical disability, pain and mental anguish, to his great detriment and loss.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in the amount of $10,000,000 (Ten Million Dollars), as would reasonably and properly compensate him for his injuries, together with costs and attorney's fees and any other relief this Honorable Court deems appropriate.

## PLAINTIFF v. DEFENDANTS
## COUNT IV
## NEGLIGENCE UNDER 18 U.S.C.S 4042 AND/OR
## SUPPLEMENTAL STATE LAW CLAIM - NEGLIGENCE

51. Plaintiff hereby incorporates averments 1 through 50 as though fully set forth herein at length.

52. Under 18 U.S.C.S. 4042 and/or Pennsylvania common law, Defendants had a duty to properly provide medical care to Plaintiff and/or had a duty to properly protect Plaintiff as he was an invitee, as concerns his degenerating eyesight, while he was under their care in FCC Allenwood and/or in Center City Philadelphia.

53. Said Defendants failed in their duty to properly provide medical care in that regard to Plaintiff, as aforementioned, and to be proved with further detail at time of trial.

54. Defendants' failure to properly provide medical care was and remains a direct and proximate cause of Plaintiff's blindness, which could have been treated, forestalled and/or delayed but for the Defendants' action and/or inaction.

55. As a consequence of Defendants' failure to properly provide medical care, Plaintiff has suffered, and will continue to suffer for an indefinite time in the future, devastating physical disability, pain and mental anguish, to his great detriment and loss.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in the amount of $10,000,000 (Ten Million Dollars), as would reasonably and properly compensate him for his injuries, together with costs and attorney's fees and any other relief this Honorable Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a 12 person jury as to all issues triable herein.

                                                Respectfully Submitted,

Date: 4/30/2013

                                                _____
                                                J. Conor Corcoran, Esquire
                                                Attorney for Plaintiff
                                                Attorney I.D. No. 89111
                                                1617 John F. Kennedy Boulevard
                                                Suite 1130
                                                Philadelphia, PA 19103

# EXHIBIT A

 MAYO CLINIC

0088-004

200 First Street SW
Rochester, Minnesota 55905
507-284-2511

September 28, 2005

**Brian R. Younge, M.D.**
Ophthalmology
(507) 284-4567

David Edwardy, O.D.
Federal Medical Center
P.O. Box 4000
Rochester, MN 55903

RE: Mr. R███ N███
MC#: 6-290-073
DOB: 3/6/1931

Dear Dr. Edwardy:

Mr. N███ presented to the Eye Department of the Mayo Clinic today complaining of decreased vision in the left eye, as well as some temporal tenderness on the left side of his head. He has been seen previously by an ophthalmologist and a diagnosis not established. The visual loss in the left eye appears to be of fairly longstanding nature. His sedimentation rate was 1 the last time it was tested.

On examination the vision was reduced in the left eye and not improvable. However, on stereopsis testing, he got down to about 60 to 80 seconds of arc, indicating a better level of visual acuity than he admits. Likewise, his color vision was slightly depressed in the left eye, but not absent. The retina examination revealed nothing striking, and he has no relative afferent pupil defect. His reading would indicate a relative central scotoma. An OCT examination was done, but did not show any substantial abnormality. I reviewed that with one of our retina specialists, Dr. Pulido, and he agreed.

Mr. N███ appears to have a slight decrease in vision of the left eye. My suggestions are that within the next few months, if his symptoms continue, that he have a repeat eye examination and include a fluorescein angiogram of the left eye. Since he is leaving the Federal Medical Center shortly, this could not be done at this time. I hope this information will be of some help to you.

Yours truly,

Brian R. Younge, M.D.

BRY:jmp

10/3/05
noted - DEdwardy DO
FMC Clinical
Director

# EXHIBIT B



**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

---

*Post Office Box 888*
*Benjamin Franklin Station*
*Washington, D.C. 20044*

BMP:KRJackson:krj
157-16-NEW

May 15, 2012

J. Conor Corcoran, Esq.
Attorney at Law
One Penn Center at Suburban Station
Suite 1130
1617 JFK Boulevard
Philadelphia, PA  19103-1811

      Re:  Administrative Tort Claim of Ralph Natale

Dear Mr. Corcoran:

      This is in response to your client's administrative tort claim dated May 10, 2012, which you submitted to the Department of Justice (Department).  The Department received the claim via facsimile on May 11, 2012.  I will contact you if further information is needed.

                                  Very truly yours,

                                    BRENT M. PHIPPS
                                    Paralegal
                                    Civil Division, Torts Branch

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**Ralph Natale** :
c/o J. Conor Corcoran, Esquire :
1617 JFK Boulevard, Suite 1130 :
Philadelphia, PA 19103 :
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　: **CIVIL ACTION**
　　　　　　　　　　　　　　　　　　　:
　　　　　　**Plaintiff,**　　　　　　　: No.
　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　: **JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　　　　:
**United States of America, et. al.,** :
　　　　　　　　　　　　　　　　　　　:
　　　　　　**Defendants.**　　　　　　:
　　　　　　　　　　　　　　　　　　　:

## CERTIFICATE OF SERVICE

　　　I, J. Conor Corcoran, Esquire, hereby certify that a true and correct copy of the foregoing Complaint was sent to the following by the following means:

Ms. Joyce Zoldak, Esq.
Associate General Counsel
Federal Bureau of Prisons
320 First Street, N.W.
Room 977 HOLC
Washington, D.C. 20534
VIA FIRST CLASS MAIL

Zane David Memeger, Esq.
U.S. Attorney for the E.D.Pa.
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
VIA FAX: 215-861-8618

Ricardo Martinez, Warden
FCC Allenwood
Allenwood, PA 17810
VIA FAX: 570-547-9201

Kelly DeWald
FCC Allenwood
Allenwood, PA 17810
VIA FAX: 570-547-9201

Respectfully Submitted,

Date:  4/30/13

_____
L. Conor Corcoran, Esquire
Attorney for Plaintiff