IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RALPH NATALE                    :    CIVIL ACTION
                                :
            v.                  :
                                :
UNITED STATES OF AMERICA,       :
et al.                          :    NO. 13-2339

                              MEMORANDUM

McLaughlin, J.                                    March 28, 2014

          This action arises from prison officials' alleged

failure to properly diagnose and treat a former inmate's

deteriorating eyesight.  The plaintiff, Ralph Natale, was a

federal inmate from 1999 through 2011.  Beginning in 2002,

Natale began to experience deteriorating vision.  Natale made

periodic requests for treatment.  Although he was examined by

medical professionals, Natale alleges that prison officials and

medical professionals failed to properly diagnose and treat his

condition.  He alleges that he was unaware of the true cause of

his degenerating vision until he was examined by a doctor

following his release from prison.  The plaintiff alleges that

his deteriorating vision could have been reversed or halted if

his condition had been properly diagnosed and treated while he

was in prison.

          The plaintiff filed his original complaint on April

30, 2013.  Following an extension of time granted by the Court,

the defendants filed motions to dismiss on September 26, 2013.

The plaintiff then filed an amended complaint on October 31, 2013.  The amended complaint brings claims against the United States of America, Ricardo Martinez,[1] Kelley DeWald,[2] and 1-100 John or Jane Doe defendants.  The amended complaint alleges claims for inadequate medical care under 42 U.S.C. § 1983 and Bivens against DeWald and Martinez, conspiracy under 42 U.S.C. § 1985(3) against DeWald and Martinez, negligence under the Federal Tort Claims Act against the United States, and negligence under 18 U.S.C. § 4042 and Pennsylvania law against all defendants.

Before the Court are motions to dismiss filed by the United States and the individual defendants DeWald and Martinez. The Court will grant both motions.

I.    Facts Alleged in the Amended Complaint

Ralph Natale was incarcerated from June 1998 through May 2011, at various federal institutions including FCC Allenwood.  In November 2002, Natale began to report to prison staff and physicians about degenerating vision in his left eye.

---

[1] Ricardo Martinez was the warden at FCC Allenwood while Natale was imprisoned there.  Ind. Def.'s Mot. to Dismiss, at 5.
[2] Kelley DeWald was the Health Services Administrator at FCC Allenwood while Natale was imprisoned there.  Id. at 6.

Until his release in May 2011, Natale's vision progressively degenerated.  Throughout this time, Natale made periodic oral and/or written requests to "Defendants and/or prison staff and/or prison physicians and/or agents from the FBI and/or the U.S. Marshalls and/or agents/attorneys from the U.S. Attorney's Office for investigation, diagnosis and/or treatment of his degenerating vision."  Am. Compl. ¶¶ 8, 10-11.

While Natale cooperated with the FBI and the U.S. Attorney's Office as a witness in Philadelphia between 2000 and 2004, Natale's daughter-in-law, Kathaleen Natale, made an appointment for Natale to visit the Wills Eye Institute.  Ms. Natale secured permission from the Bureau of Prisons and/or the U.S. Attorney's Office to allow Natale to attend his appointment.  Assistant U.S. Attorney Mary Futcher refused to allow Natale to go through with his appointment, however, and he was not allowed to reschedule.  Am. Compl. ¶¶ 9, 14-18.

On February 17, 2005, Natale submitted a request to prison staff and/or prison physicians to be examined by a neuro-ophthalmologist.  In response to that request, the Clinical Director at FCC Allenwood ordered that Natale "visit an optometrist yet again because there 'were no signs to authenticate the inmate's suspicions.'"  Am. Compl. ¶ 21.

3

On September 28, 2005, Natale was examined by Dr. Brian Younge in the ophthalmology department at the Mayo Clinic. Dr. Younge reported to the optometrist at Federal Medical Center, David Edwardy, O.D., that Natale "had been previously seen by an 'ophthalmologist and a diagnosis not established,' that [Natale] had degenerating vision 'of fairly longstanding nature,' but that [Natale] had 'a better level of visual acuity than he admits.'"  Dr. Younge conducted an examination, and concluded that Natale's "vision was reduced in the left eye and not improvable."  A retina examination and OCT examination were performed.  The examinations "revealed nothing striking" nor "any substantial abnormality," but the report noted that Natale's "reading would indicate a relative central scotoma." Dr. Younge reviewed Natale's examination results with a retina specialist, Dr. Pulido, who agreed.  Dr. Younge recommended that Natale have a repeat eye examination in the next few months and a fluorescein angiogram of the left eye.  Following this visit, Natale was not seen by another ophthalmologist or neuro-ophthalmologist until his release.  Am. Compl. ¶ 23, 25, Exh. A ("9/28/05 Dr. Younge Letter").

Throughout Natale's time in prison, he was told by "prison staff and/or prison doctors that his progressively

deteriorating vision was unavoidable and/or irreversible, that there was no way to prevent it from becoming worse and that his symptoms were merely the result of 'getting older.'"  The amended complaint alleges that the "Defendants failed to properly investigate, diagnose and/or treat [Natale's] degenerating eyesight, and . . . failed to keep [Natale] apprised of the causes behind his degenerating eyesight."  The amended complaint also alleges that "Ricardo Martinez and/or Kelly DeWald (by and through their prison staff and/or prison physicians) continually failed to properly provide any semblance of an adequate investigation, diagnosis, and/or treatment of [Natale's] degenerating eyesight." Am. Compl. ¶ 12-13, 19.

By May 2007, Natale was examined by prison staff and/or prison physicians at FCC Allenwood, who informed him that he was legally blind.  Natale cannot see better than 20/200 in either eye.  Am. Compl. ¶¶ 24, 29.

After Natale's release in May 2011, his condition was identified as the result of "a host of retinal conditions, including but not limited to macular degeneration, macular atrophy, posterior vitreous detachment and asteroid hyalosis." Am. Compl. ¶ 28.

5

As a result of the "Defendants' failure to diagnose, and/or provide adequate treatment for, [Natale's] obviously degenerating eyesight while he was in their care, [Natale] is functionally blind, with limited peripheral vision, at best." Natale alleges that, had the causes of his deteriorating eyesight been properly diagnosed prior to his release, the progression of his condition could have been reversed or halted. Id. at ¶¶ 27, 29.

On May 10, 2012 Natale submitted an administrative tort claim to the U.S. Department of Justice.  As of the filing of the Amended Complaint, Natale had not received a response to his administrative claim, except for acknowledgement of the submission.  Id. at ¶¶ 30-31, Exh. B ("Admin. Claim Acknowledgement Letter").

II.   Analysis

    A.   Standard of Review

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts and reasonable inferences as true and construe the amended complaint in the light most favorable to the plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 201 (3d Cir. 2009).  Legal conclusions

and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not withstand a motion to dismiss.  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Disregarding any legal conclusions, the court should determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.

B.  United States' Motion to Dismiss

The amended complaint asserts claims against the defendant United States for: (1) negligence under the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"); and (2) negligence under 18 U.S.C. § 4042 and Pennsylvania common law.  The plaintiff has withdrawn his § 4042 and common law negligence claims against the United States.  See Pl.'s Resp. to U.S. Mot. to Dismiss, at 3.  The United States argues that the plaintiff's FTCA claim fails for three reasons: (1) the FTCA's 2-year statute of limitations has expired; (2) the FTCA claim is barred by Pennsylvania's 7-year statute of repose; and (3) the plaintiff fails to state a claim for negligent medical care, and has failed to file a Certificate of Merit as required by Pennsylvania law.  The Court will dismiss the plaintiff's FTCA claim because he failed to file the required Certificate of

7

Merit and because his claim is barred by Pennsylvania's statute of repose.

        1.   <u>Statute of Limitations under the FTCA</u>

      The Court finds that it is not clear from the face of the amended complaint that the plaintiff's FTCA claim is barred by the statute of limitations.  <u>See</u> <u>W. Penn Allegheny Health Sys. v. UPMC</u>, 627 F.3d 85, 105 n.13 (3d Cir. 2010) (holding that a statute of limitations defense is the proper subject of a motion to dismiss if the plaintiff's tardiness is clear from the face of the complaint).  The FTCA's statute of limitations requires an administrative tort claim to be filed within two years of the claim's accrual.  28 U.S.C. § 2401(b).  Natale filed his administrative tort claim with the U.S. Department of Justice on May 10, 2012.  The government argues that Natale's claim accrued, at the latest, by May 2007 when prison medical officials informed Natale that he was legally blind.  Because Natale did not file his administrative claim by May 2009, the government argues that his FTCA claim is barred by the statute of limitations.

      The statute of limitations in an FTCA claim is tolled until the plaintiff "possesses facts which would enable 'a

8

reasonable person to discover the alleged malpractice.'" Hughes
v. United States, 263 F.3d 272, 275 (3d Cir. 2001) (quoting
Barren v. United States, 839 F.2d 987, 991 (3d Cir. 1988)).  The
time at which Natale's claim accrued "depends upon when and if
[he] discovered or through the exercise of reasonable diligence
should have discovered that the failure of his doctors to
diagnose, treat, or warn him led to his deteriorating . . .
condition." Id. at 277 (quoting Augustine v. United States, 704
F.2d 1074, 1078 (9th Cir. 1983).

        In Hughes v. United States, the plaintiff was treated
with heparin, a blood thinner, in preparation for a surgery at a
VA hospital.  263 F.3d at 274.  Due to an allergic reaction to
the heparin, Hughes developed gangrene in his extremities, which
resulted in the amputation of both of his hands and legs.  Id.
Upon awakening after the amputation surgeries, Hughes was not
informed that, had his heparin allergy been timely diagnosed and
treated, the amputations would not have been necessary.  Id.
Rather, he was led to believe that the gangrene was a natural,
untreatable allergic reaction.  Id. at 276.

        The Third Circuit held that Hughes's FTCA claim
accrued when he "learned or should have learned that the doctors
could have treated him, but failed to do so, with anticoagulants

which would have . . . saved his limbs." Id. at 277. Because
Hughes was told that his legs were amputated due to a natural
reaction, he "had no reason to suspect at the time of his
discharge" that the iatrogenic cause of his injury "was the
failure of the VA doctors to arrest the development of gangrene
by appropriate medical treatment." Id. at 278.

The analysis in Hughes applies to this case. Here,
the amended complaint alleges that Natale's vision progressively
deteriorated to its current state because of the defendants'
failure to properly diagnose and treat Natale's condition.
Natale alleges that he was not aware until after his release in
May 2011 of the true cause or treatable nature of his
deteriorating vision, because while he was incarcerated prison
medical staff informed Natale that his deteriorating vision was
unavoidable and that his symptoms were caused by aging. Am.
Compl. ¶¶ 13, 26, 28.

As in Hughes, Natale had no reason to suspect before
his release that his ultimate loss in vision may have been
partially caused by his doctors' failure to properly diagnose
and treat his eye conditions. It is not clear from the face of
the complaint when Natale became aware, or should have become
aware through reasonable diligence, that the prison doctors'

failure to diagnose, treat, or warn him led to his blindness. The Court, therefore, cannot make a determination at this stage as to whether Natale's FTCA claim is barred by the statute of limitations.

        2.   <u>Certificate of Merit and Statute of Repose</u>

        The Certificate of Merit requirement and statute of repose apply only to professional negligence claims.  Whether the plaintiff's FTCA claim must be dismissed for these reasons, therefore, is dependent upon whether his FTCA claim is a professional negligence claim.  The plaintiff argues that he is not required to file a Certificate of Merit and the statute of repose does not apply because "[t]his is not a medical malpractice case, because there was no medicine provided to the Plaintiff to begin with."[3]  Pl.'s Sur-Reply to U.S. Mot. to Dismiss at 5.  The plaintiff apparently argues that the

_____

        [3]  In the plaintiff's response to the government's motion to dismiss, the plaintiff argued that the amended complaint does not allege that medical care was beneath any standard of care, but alleges that the defendant "failed to provide any treatment with deliberate indifference."  Pl.'s Resp. to U.S. Mot. to Dismiss at 7.  The plaintiff clarifies in his sur-reply to the defendant's motion to dismiss that he is not making a "deliberate indifference" claim against the United States, which is not cognizable under the FTCA.

11

plaintiff's claim is one of ordinary negligence rather than professional negligence.  Id.  The plaintiff "intends to prove, mostly through expert discovery, that diagnoses and treatments were available to address Plaintiff's degenerating eyesight, and that the Defendant failed to provide them."  Id.

In considering whether an act complained of is one of ordinary negligence and not medical malpractice, a court must consider "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." Grundowski v. United States, 2012 WL 1721781, at *6 (M.D. Pa. May 16, 2012) (quoting Davis v. United States, 2009 WL 890938, at *5 (M.D. Pa. Mar. 31, 2009)).  "When evidence is predicated 'upon facts constituting medical treatment . . . involv[ing] diagnosis, care, and treatment by licensed professionals,' the evidence 'must be characterized as [evidence of] professional negligence."  Id. (quoting Ditch v. Waynesboro Hosp., 917 A.2d 317, 322 (Pa. Super. Ct. 2007).

A claim "sounds in malpractice' where 'the conduct at issue constituted an integral part of the process of rendering medical treatment.'"  Iwanejko v. Cohen & Grigsby, P.C., 249

Fed. App'x 938, 944 (3d Cir. 2007) (unpublished) (quoting <u>Ditch</u>, 917 A.2d at 323).  The hiring, training and supervision of employees who assist with the care and treatment of patients is also considered an integral part of providing professional medical treatment.  <u>Ditch</u>, 917 A.2d at 322.

In considering these factors, Natale's claim is one for medical professional negligence.  Natale's claim is that prison staff and physicians failed to properly diagnose the cause of his deteriorating vision, and failed to provide treatment that could have slowed or reversed the deterioration. Whether prison physicians misdiagnosed Natale's particular eye conditions and failed to prescribe available treatment are issues within the scope of a professional relationship.  The evidence that the plaintiff intends to provide to prove his case – expert evidence that diagnoses and treatments were available to address his degenerating vision – must be characterized as evidence of professional negligence, because it relates to the diagnosis, care and treatment of medical professionals.  The diagnosis and treatment of macular degeneration, macular atrophy, posterior vitreous detachment and asteroid hyalosis are issues of medical judgment beyond the realm of common knowledge.

13

District courts have characterized similar claims as professional negligence claims requiring a Certificate of Merit, rather than ordinary negligence claims.  For example, in Ferguson v. Sniezek, the plaintiff claimed that "he was not provided with timely and proper medical care for the cataracts diagnosed in both eyes."  2013 WL 3942090, at *16 (M.D. Pa. Jul. 30, 2013).  The plaintiff alleged that the prison medical staff's delay in performing surgery and failure to treat his condition constituted negligence.  Id.  The district court held that a Certificate of Merit was required because "expert testimony would be necessary to establish that Plaintiff required surgery within a certain time period, and that the failure to timely provide surgery caused injury."  Id. at *17.

Similarly, the district court in Baumgardner v. Ebbert characterized the plaintiff's claim that medical providers failed to order the type of physical therapy that was necessary at a particular point in time as professional negligence requiring a Certificate of Merit.  2013 WL 1249040, at *15 (M.D. Pa. Mar. 26, 2013).

The plaintiff's attempt to frame his claim as one of ordinary negligence because he did not get any treatment whatsoever is contradicted by the allegations in the complaint.

14

The amended complaint alleges that Natale was examined by medical professionals, including an ophthalmologist at the Mayo Clinic.  Whether the diagnosis and recommended course of treatment by those medical professionals was appropriate is a question of medical judgment that must be proven by expert testimony.

Because Natale's FTCA claim is one of professional negligence, it must be dismissed for failing to file a Certificate of Merit within sixty days of filing his complaint. It also is barred by Pennsylvania's statute of repose, and will therefore be dismissed with prejudice.

A federal court addressing an FTCA claim is required to apply the law of the state in which the alleged tortious conduct occurred.  28 U.S.C. § 1346(b)(1); Gould Elec. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000).  The government is only liable under the FTCA if, under the same circumstances, a private person would be liable under state law.  28 U.S.C. §§ 2674, 1346(b)(1); Lomando v. United States, 667 F.3d 363, 372 (3d Cir. 2011).  Because the amended complaint alleges that the negligence occurred in Pennsylvania, the substantive law of Pennsylvania applies.

15

Under Pennsylvania law, a plaintiff asserting a claim for medical negligence must present "expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." Johnson v. Caputo, 2013 WL 2627064, at *12 (E.D. Pa. Jun. 12, 2013). Pennsylvania Rule of Civil Procedure § 1042.3 explains that requirement:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

16

Pa. R. Civ. P. § 1042.3(a).

This requirement is substantive law that applies in federal courts.  Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011).  Failure to file a Certificate of Merit or a motion for an extension under Rule 1042.3(d) is fatal to the plaintiff's claim unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." Perez v. Griffin, 304 Fed. App'x 72, 74 (3d Cir. 2008) (unpublished) (citing Womer v. Hilliker, 908 A.2d 269, 279-80 (Pa. 2006).  The plaintiff concedes that he has not filed a Certificate of Merit, and he does not make an argument for a reasonable excuse.

Medical professional negligence claims brought under Pennsylvania law are also limited by a seven-year statute of repose.  Under 40 P.S. § 1303.513,[4] "no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of

---

[4] This statute of repose applies to causes of action that arise on or after its effective date, March 20, 2002. Act 2002-13, P.L. 154, § 5105(b).  Because the amended complaint alleges that Natale began to complain about his deteriorating vision in November 2002, the statute of repose applies.

contract."[5]  Several courts have held that statutes of repose are

substantive and not procedural rules.  See, e.g., Kaplan v.

Shure Bros., Inc., 153 F.3d 413, 422 (7th Cir. 1998); Star v.

Rosenthal, 884 F. Supp. 2d 319, 325 (E.D. Pa. 2012); In re Cmty.

Bank of N. Virginia, 467 F. Supp. 2d 466, 480-81 (W.D. Pa.

2006); Altoona Area Sch. Dist. v. Campbell, 618 A.2d 1129, 1134

(Pa. Commw. Ct. 1992).  Because the United States is only liable

under the FTCA if a private person under the same circumstances

would be liable under Pennsylvania law, the United States is not

liable if the plaintiff's claim is barred by the statute of

repose.  See Anderson v. United States, 669 F.3d 161, 164-65

(4th Cir. 2011) ("[A]n FTCA claim does not lie against the

United States where a statute of repose would bar the action if

brought against a private person in state court.").

        Natale's FTCA claim is time-barred by Pennsylvania's

statute of repose if the tort occurred prior to May 2005.[6]  The

_____

    [5] There are exceptions to the seven-year statute of repose
for injuries caused by a foreign object and injuries of minors.
40 P.S. § 1303.313(b), (c).  Neither of these exceptions apply
here.
    [6] Courts have held that when a statute of repose expires
between the time an FTCA administrative claim and the subsequent
lawsuit are filed, the statute of repose is preempted by the
FTCA's administrative claim requirement.  See, e.g., Cooper v.
United States, 2013 WL 6845988, at *8 (E.D. Pa. Dec. 30, 2013).

Hughes analysis discussed in the context of the FTCA's statute
of limitations period does not apply to the statute of repose.
"A statute of repose bars any suit that is brought after a
specified time since the defendant acted, even if this period
ends before the plaintiff has suffered a resulting injury."  In
re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 199 (3d Cir.
2007) (internal quotation marks and citation omitted).  The
discovery rule and other equitable tolling doctrines do not
apply to statutes of repose unless they are explicitly
incorporated into the statute.  Lieberman v. Cambridge Partners,
LLC, 432 F.3d 482, 490 (3d Cir. 2005); Williams v. Wells Fargo
Home Mortg., Inc., 410 Fed. App'x 495, 499 (3d Cir. 2011).

        The amended complaint alleges that the plaintiff began
to complain about his deteriorating vision in November 2002.
Although the amended complaint does not make clear what actions
were taken by prison physicians regarding his vision between
2002 and 2005, Natale apparently became dissatisfied with the
diagnosis and treatment provided sometime during that period.
This is evidenced by his requests for outside treatment at the

---

The Court will therefore look at the seven years prior to the
filing of his administrative claim, rather than the filing of
this lawsuit.

Wills Eye Institute.  By February 17, 2005, Natale requested a second opinion by a neuro-ophthalmologist for his condition, which "remained inconclusively diagnosed."  At that time, Natale was referred to an optometrist "yet again" because there "were no signs to authenticate the inmate's suspicions."  Am. Compl. ¶¶ 10, 14-16, 21-22.

        Natale's claim that the prison physicians failed to properly investigate, diagnose and treat his eye condition therefore occurred, at the latest, by February 2005.  By that time, prison officials and physicians refused to provide adequate diagnosis and treatment for Natale's condition. Although Natale may not have discovered, until after his release, the correct diagnosis of his condition or that a particular treatment was available that could have prevented his blindness, the discovery rule and the tolling rule discussed in Hughes do not apply to the statute of repose.  The continuing violations doctrine, which the plaintiff attempts to invoke by alleging that the defendants failed to treat and diagnose his condition "until his release in May 2011," does not apply either.  Natale's FTCA claim is therefore barred by Pennsylvania's statute of repose, and will be dismissed with prejudice.

                              20

C.   Individual Defendants' Motion to Dismiss

The amended complaint alleges claims against individual defendants DeWald and Martinez for inadequate medical care under 42 U.S.C. § 1983 and Bivens, conspiracy under 42 U.S.C. § 1985(3), and negligence under 18 U.S.C. § 4042 and Pennsylvania common law.[7]  The defendants argue that all of the plaintiff's claims should be dismissed.  In response to the defendants' motion to dismiss, Natale has withdrawn his § 1983 claim against DeWald and Martinez.  The plaintiff has also conceded that DeWald and Martinez are absolutely immune from the plaintiff's state law claims.   The plaintiff argues, however, that his Bivens, § 1985(3), and § 4042 claims should not be dismissed.

The only allegations in the Amended Complaint against defendants Kelly DeWald and Ricardo Martinez specifically are that Martinez and/or DeWald (by and through their prison staff and/or prison physicians) continually failed to properly provide any semblance of an adequate investigation, diagnosis, and/or treatment of the plaintiff's degenerating eyesight.  The

---

[7] The only claims alleged against "all defendants" are the negligence claims under § 4042 and Pennsylvania common law.

plaintiff alleges that, by virtue of his frequent complaints about his degenerating eyesight, DeWald and Martinez had direct knowledge of the condition of his vision.  Despite that knowledge, these defendants acted with deliberate indifference and/or negligently and/or intentionally interfered with and/or prohibited the proper investigation, diagnosis and/or treatment of Natale's degenerating eyesight.  Am. Compl.¶¶ 19, 33-39.

### 1.  Bivens Claim

The defendants argues that Natale's Bivens claim must be dismissed for two reasons: (1) the Bivens claim is time-barred;[8] and (2) the amended complaint does not plead personal

———————————————

[8] Natale's Bivens claim is governed by Pennsylvania's two-year statute of limitations.  Napier v. Thirty or More Unidentified Fed. Agents, 855 F.2d 1090, 1087-88, n.3 (3d Cir. 1988); 42 Pa. C.S. §§ 5524(2).  For the same reasons discussed above, it is not clear to the Court that Natale's Bivens claim is barred by the statute of limitations.  The statute of limitations begins to run when plaintiffs possess "sufficient critical facts to put them on notice that a wrong has been committed and that they need to investigate to determine whether they are entitled to redress."  Vitalo v. Cabot Corp., 399 F.3d 536, 542-43 (3d Cir. 2005) (internal quotations and citation omitted).  "If a person knows of an injury but is given an incorrect, but nevertheless reasonable, diagnosis, that person may be misdirected as to the injury's cause.  In that case, the statute of limitations might not begin to run until the injured person is given a correct diagnosis or should otherwise know the true cause (in light of the totality of the circumstances)."

conduct or the violation of a clearly established constitutional right and DeWald and Martinez are entitled to qualified immunity.  The Court will dismiss the plaintiff's <u>Bivens</u> claim based on the defendants' second argument.

It appears that the plaintiff attempts to assert a <u>Bivens</u> claim against DeWald and Martinez based on vicarious liability, by alleging that they failed to provide adequate medical care "by and through their prison staff and/or prison physicians."  Claims based on vicarious liability against prison officials are not available under <u>Bivens</u>, however.  <u>Bistrian v. Levi</u>, 696 F.3d 352, 366 (3d Cir. 2012).  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of <u>respondeat</u> <u>superior</u>."  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 676).  To state a <u>Bivens</u> claim against prison officials, a plaintiff must allege that each official, through his or her own actions, has violated the Constitution.  <u>Id.</u>  To the extent the plaintiff alleges a <u>Bivens</u> claim against DeWald and Martinez based on vicarious liability

---

<u>Id.</u> (citing <u>Debiec v. Cabot Corp.</u>, 352 F.3d 117, 132 (3d Cir. 2003).

for the actions of other prison officials or physicians, the claim must be dismissed.

The amended complaint also fails to state a claim against DeWald and Martinez for a constitutional violation in their individual capacities. "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The amended complaint does not allege any personal conduct by DeWald and Martinez. The conclusory allegation that DeWald and Martinez had "actual knowledge of the extremely serious nature of Plaintiff's deteriorating vision," is insufficient to state a claim against them. Although "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," such allegations "must be made with appropriate particularity. Id.

The amended complaint does not allege that Natale made complaints or requests to DeWald or Martinez specifically, or that DeWald and Martinez did or did not act in response to those complaints or requests. There are no facts alleging how or when DeWald and Martinez became aware of Natale's condition. Furthermore, there are no facts that suggest that DeWald or Martinez knew of and disregarded an excessive risk to Natale's

24

health, or were aware of facts from which the inference could be drawn that a substantial risk of harm existed and that they in fact drew that inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Additionally, the amended complaint indicates that Natale was being seen by an optometrist throughout his incarceration, and that Natale was seen by at least one outside ophthalmologist at the Mayo Clinic.  The Third Circuit has held that when a prisoner is under the care of medical professionals, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  Id.

Even if Natale had alleged with specificity that he complained about his deteriorating vision to DeWald and Martinez, as non-medical prison officials they were entitled to rely on the diagnoses and treatment decisions of the medical professionals who had examined Natale.  DeWald and Martinez

25

cannot be said to have been deliberately indifferent to Natale's medical needs when Natale was under the care of medical professionals.  DeWald and Martinez cannot be held liable for the alleged negligence or deliberate indifference of those medical professionals caring for Natale.  Because DeWald and Martinez cannot be liable under these circumstances, amendment would be futile and Natale's <u>Bivens</u> claim is dismissed with prejudice.

> 2.  <u>Conspiracy Claim</u>

The amended complaint alleges that DeWald and Martinez, "through their actions as aforementioned, did intentionally conspire, while acting within the course and scope of their authority, to deprive Plaintiff of his rights and privileges under 42 U.S.C. section 1983, which ultimately caused Plaintiff substantial damage and harm."  Am. Compl. ¶ 45.  This allegation is insufficient to state a claim under 42 U.S.C. § 1985(3).

In order to state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal

26

privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 828-29 (1983).

The defendants argue that Natale fails to allege the second requirement because he does not allege, anywhere in the amended complaint, that a conspiracy was motivated by discriminatory animus against an identifiable class or that the discrimination was invidious. The plaintiff argues that he does not need to allege race or class based animus because animus toward one person, in the form of the defendants' deliberate indifference to his medical needs, is sufficient. It is clear from Third Circuit and Supreme Court precedent, however, that allegations of discriminatory animus against an identifiable class are required in order to state a § 1985(3) claim.

Section 1985(3) is not meant "to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" Id. at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02

27

(1971).  A plaintiff asserting a § 1985(3) claim "must allege that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."  Id.  Natale has made no such allegations.

The amended complaint also fails to allege the first and third requirements of a § 1985(3) conspiracy claim.  The amended complaint alleges only that the defendants "did intentionally conspire" to deprive Natale of his rights.  This conclusory statement lacks the requisite specificity to state a claim.  The amended complaint contains no factual allegations regarding what actions the defendants took to form or further the conspiracy.  The plaintiff's § 1985(3) is therefore dismissed with prejudice.[9]

3.  Section 4042 Claim

Finally, plaintiff asserts a claim against DeWald and Martinez for negligence under 18 U.S.C. § 4042.  That statute

---

[9] The Court finds that amendment of this claim would be futile.  The plaintiff filed the amended complaint after having the benefit of reviewing this same argument regarding discriminatory animus against an identifiable class when it was presented in the defendants' initial motion to dismiss.  Because the plaintiff failed to cure this defect in the amended complaint, the Court will dismiss this claim with prejudice.

imposes the general duty on the Bureau of Prisons to provide for the safekeeping, care, subsistence, protection, instruction and discipline of all persons charged with or convicted of offenses in the United States.  18 U.S.C. § 4042.  Section 4042 does not create a private right of action against prison officials, however.

In Chinchello v. Fenton, the Third Circuit held that § 4042 was not "intended to assign any specific responsibility to the Director of the Bureau [of Prisons] personally or to create a private right of action against him in favor of the inmates under his direct care."  805 F.2d 126, 134 (3d Cir. 1986) (citing Williams v. United States, 405 F.2d 951, 954 (9th Cir. 1969).  Contrary to the plaintiff's assertion, Chinchello does not apply exclusively to actions against the Director of the Bureau of Prisons.[10]

In Williams v. United States, upon which the Third Circuit relied in Chinchello, the Ninth Circuit held that § 4042 "does not impose a duty on any officials who may be responsible

_____

[10] The plaintiff also argues that Chinchello enumerated the circumstances under which a plaintiff can assert a claim against prison officials under § 4042.  In support, the plaintiff quotes language from Chinchello discussing Bivens claims, and not claims under § 4042.  The language cited by the plaintiff does not support his argument.

to the Bureau of Prisons, and does not establish a civil cause of action against <u>anyone</u> in the event the Bureau's duty is breached."  405 F.2d at 954 (emphasis added).  Other circuit courts have similarly held that there is no private cause of action under 18 U.S.C. § 4042.  <u>See, e.g.</u>, <u>Harper v. Williford</u>, 96 F.3d 1526, 1528 (D.C. Cir. 1996); <u>Nwaebo v. Hawk-Sawyer</u>, 83 F. App'x 85, 86 (6th Cir. 2003) (unpublished).  "This conclusion is consistent with the Supreme Court's unwillingness to presume the existence of a private right of action where none is explicitly articulated by Congress."  <u>Harper</u>, 96 F.3d at 1528 (citing <u>Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n</u>, 453 U.S. 1 (1981)).  As no private cause of action exists under § 4042, the plaintiff's claims thereunder are dismissed with prejudice.[11]

  An appropriate order shall issue separately.

---

[11] Only Count IV, alleging negligence under § 4042 and common law, is alleged against "all defendants," which the Court will construe to include the John and Jane Doe defendants. Because there is no private right of action under § 4042, the plaintiff's claims against the John and Jane Doe defendants are also dismissed with prejudice.